IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

CONFEDERATED TRIBES OF THE )
CONFEDERATED TRIBES OF )
THE CHEHALIS RESERVATION, )
)
    Plaintiffs, )
v. ) No. 2:26-cv-00061-SAB
)
NATIONAL OCEANIC AND )
ATMOSPHERIC ADMINISTRATION; )
SECRETARY OF COMMERCE )
HOWARD LUTNICK, in his official )
capacity; JENNIFER QUAN, Regional )
Administrator, NOAA Fisheries West )
Region, in her official capacity; BUREAU )
OF INDIAN AFFAIRS; SECRETARY )
OF THE INTERIOR DOUGLAS )
BURGUM, in his official capacity, )
)
    Defendants. )
)

## **Reply to Defendants' Response to Plaintiffs' Motion(s) for Emergency Temporary Restraining Order**

The National Oceanic and Atmospheric Administration's ("NOAA") actions, in conjunction with the other Defendants in this case, violate at least the Administrative Procedure Act and Section 5123(f) of the Indian Reorganization Act. Defendants' "Response" (Response to Plaintiffs' Motion(s) for Emergency Temporary Restraining Order (ECF No. 22)) is replete with admissions (often by omission), concedes that neither a reasoned or written decision was ever given to the

Plaintiff Tribes (or "Tribes," the Confederated Tribes of the Colville Reservation and the Confederated Tribes of the Chehalis Reservation), and discloses for the first time a "decision" that purports to be a rational basis for excluding the Plaintiff Tribes but is both factually wrong and nonsensical.

Time is of the essence. Defendants state, Response at 2, that "it is anticipated awards will go out this Friday, i.e. tomorrow," which is now *today*. Counsel received an email from chambers yesterday offering a hearing on Monday or Tuesday. For the reasons stated herein and in the Memorandum (ECF No. 16) supporting their motions for temporary and preliminary equitable relief (ECF Nos. 13-15), Plaintiffs respectfully request that the Court grant the Motion for Emergency Temporary Restraining Order immediately, on the written filings, for a period of days until the Court and the Parties can move on to the Motion for TRO (ECF No. 14) and/or the Motion for Preliminary Injunction (ECF No. 15).

## I.  Temporary and Preliminary Injunctive Relief Standard

### A. Success on the Merits

The Plaintiff Tribes are more than likely to succeed on the merits. In an effort to argue otherwise, Defendants misconstrue one of the Tribes' arguments to set up a strawman. In their Memorandum, ECF No. 16 at 13-14, the Tribes identified and quoted a NOAA document from June 5, 2023 that stated, "Tribal governments, as defined by the statute, are eligible for IRA funding." More specifically, that

document (D Ex. 2 at 8) recognized that NOAA was establishing "[a] set-aside for salmon hatcheries for tribal governments, which will be made available through a process with the Bureau of Indian Affairs and distributed through 638 contracts **($240M)**." It is NOAA, not the Tribes, that used the term "tribal governments." It was in that context only that the Tribes turned to the definition of "Tribal Government" in the Inflation Act, Section 40001, and the Plaintiff Tribes of course meet that definition. The Tribes are of course not arguing that they should be eligible to apply for "Whale[] and Arctic Research" funding or funding for "institutions of higher education." They are not even arguing that they are entitled to apply for the $60 million in tribal funding for "Mitchell Act" tribes. ECF No. 16 at 3 n.2.

But once NOAA exercised its discretion to allocate $240 million to non-Mitchell Act tribal Pacific salmon hatcheries and arrived at the (previously undisclosed) March 29, 2024 "decision," NOAA created a "meaningful standard against which to judge the agency's exercise of its discretion." Response at 9, quoting *Heckler v. Chaney*, 470 U.S. 821, 830 (1985). Whether NOAA reasonably applied that standard is within the jurisdiction of this Court under the APA.

Defendants' newly disclosed March 29, 2024 "decision" was to provide funding to tribes that meet the following criteria:

> Federally recognized tribes that have a Pacific salmon or steelhead hatchery facility or interest in a Pacific salmon or steelhead hatchery facility that needs maintenance and/or modernization, and where an allocation of funds for that facility would contribute to the exercise of

3

tribal salmon fishing in four significant tribal salmon fisheries, the US v. Oregon, US v. Washington, Klamath/Trinity, and Metlakatla fisheries.

Response at 5, D-Ex 11 at 1.

Assuming *arguendo* that this statement was a proper exercise of Defendants' discretion, the Plaintiff Tribes meet **all** of these criteria. They are federally recognized tribes. ECF No. 16 at 14. They both have Pacific salmon hatcheries, ECF No. 16 at 5-7 and cited exhibits; P Ex 6-E-1, that would benefit from "maintenance and/or modernization." ECF No. 1 at ¶¶ 151-185. Most damning for Defendants' argument, funds for their hatcheries "would contribute to the exercise of tribal salmon fishing in four significant tribal salmon fisheries." Pacific salmon from Colville's Chief Joseph Hatchery are caught by members of tribes downstream in the Columbia River basin, in other words in the "*U.S. v. Oregon*" "area". Second Brushwood Declaration, P Ex. 9 at ¶¶ 5-8. Similarly, Pacific salmon from the Chehalis hatchery are caught by members of tribes downstream of Chehalis (and in the Pacific Ocean), in other words in the "US v. Washington" "area". Second Declaration of Glen Connelly, P Ex. 10 at ¶¶ 3-6. Both Tribes' hatcheries indisputably "contribute to the exercise of tribal salmon fishing" in one of the "significant tribal salmon fisheries," And the Plaintiff Tribes are eligible to apply based on NOAA's own criteria.[1]

---

[1] Incredibly, Defendants state:

1      Defendants claim that the "extensive need" for tribal hatchery funding justifies the arbitrary exclusion of the Plaintiff Tribes, which Defendants claim was simply an exercise of discretion because they "needed to reduce the number of eligible tribes for the grants to be effective." Response at 4-5. That argument is specious. Plaintiff Tribes would agree that NOAA had sufficient discretion under the Inflation Act to focus the grant funds on tribal Pacific salmon hatcheries as Pacific salmon are specifically mentioned in Section 40001, as are tribal governments. The Plaintiff Tribes, however, meet the very criteria NOAA apparently settled on. Their exclusion was substantively arbitrary, if not capricious.

     Defendants defend the exclusion of the Plaintiff Tribes by claiming, "The eligibility criteria developed by NOAA and NMFS for the Tribal Fish Hatchery grant money was developed after many meetings in 2022 and 2023, with tribal stakeholders and separate government-to-government meetings." Response at 13.

---

> Plaintiffs ignore these criteria in their briefing likely because they do not meet this eligibility requirement. Their hatchery does not support fishing in the geographic area of one of the four listed tribal salmon fisheries – the US v. Oregon (lower Columbia), US v. Washington (Puget Sound), Klamath/Trinity (California), and Metlakatla (Alaska).

Resp. at 13. Plaintiffs did not "ignore" these criteria. The criteria were set forth in a non-public document Plaintiffs had not seen until yesterday, despite repeatedly having requested a written decision, which Defendant Quan expressly refused to provide. Desautel Decl., P Ex. 3 at ¶ 7. Had a written decision disclosing these criteria been provided, the Plaintiff Tribes *could* have and would have demonstrated that they *do* meet the criteria and could have filed suit earlier, assuming they would not have gotten relief from the Defendants.

1  But Defendants continually failed to invite the Plaintiff Tribes to those group
2  meetings, citing no invitations to ***any*** "meetings in 2022" and only one (June 2023)
3  to Colville in 2023 Resp. at 3, and only one (October 2023) to Chehalis, *Id.* at 4.
4  From Defendants' own Response, NOAA never invited both Plaintiff Tribes to the
5  same meetings, of which they admit there were "many." That is the antithesis of the
6  "reasoned decision-making" required by the APA because NOAA was not, in fact,
7  involving legitimate stakeholders.

8      Defendants also claim that the "extensive need" for tribal hatchery funding
9  justifies the arbitrary exclusion of the Plaintiff Tribes, which Defendants assert was
10 simply an exercise of discretion because they "needed to reduce the number of
11 eligible tribes for the grants to be effective." Response at 4-5. This "extensive
12 need," however, was based only on information from two commissions on which
13 neither Plaintiff Tribe sits. Resp. at 4. Had the Plaintiff Tribes been asked or been
14 allowed to participate in the consultation sessions that apparently constitute the
15 administrative record for Defendants' decision, they too can demonstrate a need for
16 the grant funds. ECF No. 1 at ¶¶ 151-185.

17     The "reasoned decision-making" approach would have been to have all
18 relevant tribes compete. And that is all the Plaintiff Tribes ultimately seek from the
19 Court – the opportunity to submit applications and have them judged fairly.

20     Defendants make short shrift of 25 U.S.C. 5123(f), stating, "Accordingly,
21

the Plaintiffs are not being treated differently under 25 U.S.C. § 5123(f), they are just not similarly situated to the tribes geographically located on the four significant salmon fisheries." But that statement **misstates** NOAA's own stated criteria. Tribes do not need to be **"on"** the "four significant salmon fisheries," instead under NOAA's own criteria, their hatcheries have to "contribute to the exercise of tribal salmon fishing *in* four significant tribal salmon fisheries." Again, both Tribes' hatcheries do so.

As argued in Plaintiffs' Memorandum, ECF No. 16 at 18, each is similarly situated to one or more of the 27 tribes. Now that the Plaintiff Tribes at last have written criteria to which to respond, they can state that conclusion with certainty as a matter of substance because they each meet those criteria as articulated by Defendants. Notably, Defendants make no attempt to refute that each of the Plaintiff Tribes have hatcheries, have federally reserved fishing rights, and are otherwise legally similarly situated to one or more of the 27 tribes. With their "geographical" distinction disproven, Defendants have no argument that the Plaintiff Tribes are not similarly situated to the 27 tribes. This disparate treatment runs directly afoul of 25 U.S.C. § 5123(f) and the APA.

Procedurally, disclosing those criteria for the very first time now, in litigation, cannot cure Defendants' failure to do so since 2024. A phone call was not sufficient, especially since Defendant Quan did not "elaborate on the reasoning for limiting the

number of tribes" and said that no written decision was forthcoming. That is unconscionable and unlawful given the fact that the March 29, 2024 "decision" now trumpeted by Defendants was issued prior to the April 3, 2024 phone call from Defendant Quan to Colville Chairman Erickson. Desautel Decl., P Ex. 3 at ¶ 7.

And procedurally, Defendants ignore Plaintiffs' point that NOAA affirmatively reached out to Metlakatla[2] while continually (albeit not uniformly) failing to invite the Plaintiff Tribes to tribal consultations. Memorandum, ECF No. 16 at 7. And if the "extensive need" for funds of tribal hatcheries in the Pacific Northwest was so great, as Defendants assert, why include California tribes and Metlakatla in Alaska but exclude two Pacific Northwest tribes that meet NOAA's criteria? The Plaintiff Tribes are more than "likely to succeed on the merits."

**B. Irreparable Harm**

Plaintiffs have filed two affidavits, numbered sequentially as Exs. 9 and 10, each asserting a strong likelihood of irreparable harm if the BIA issues award letters for more than $162 million. Defendants fail to refute that likelihood in their exhibits, and instead try to minimize it.

---

[2] There is an additional reason why Defendants' asserted "geographical" fails factually and legally. While the Ninth Circuit has held that Metlakatla has an implied federal off-reservation fishing right in areas where they have fished since time immemorial, the geographic boundaries of those areas have yet to be established by a federal court. *See Metlakatla Indian Community v. Dunleavy*, 48 F.4th 963 (9th Cir. 2022). Plaintiffs are unaware of any judicial or other determination of a "geographical" area and Defendants advance none.

1       Defendants claim that they need to issue award letters, apparently today, in order to fund (at least some of) the projects before the summer construction season but offer no explanation why a TRO lasting only days (or 14 days, at most) would preclude such projects in any event. Moreover, their own declarant admits that the ultimate goal is to make sure that funds are ***obligated*** by September 30, 2026: "Out of an abundance of caution, BIA wants to ensure that all available funds are obligated to eligible Tribes before September 30, 2026." Fredenberg Decl., ECF No. 24 at 3. An "abundance of caution" is inconsistent with the claim of irreparable harm by Defendants. And the sequenced equitable relief sought by the Plaintiff Tribes is specifically tailored to allow BIA's goal to be accomplished.

      Defendants assertions that Plaintiffs' alleged "delay" in filing suit and seeking temporary equitable relief undermines the Tribes' assertion of irreparable harm are wholly without merit. The Plaintiff Tribes diligently sought redress through Congress in 2024. Desautel Decl., P Ex. 3 at ¶¶ 10-11, 14-15. They sought redress at the highest levels of the relevant Defendant agencies in 2025. *See* ECF No. 16 at 11. From November 2024 through August 2025, the funds were effectively on hold due to efforts of the new administration and Congress to rescind or otherwise repurpose the funds. And after the Complaint in this action was filed, Plaintiffs attempted to negotiate with Defendants to obviate the need for any temporary or preliminary equitable relief, to no avail. (Undersigned counsel attests to that fact

under penalty of perjury.) For Defendants to argue that their obdurate refusal to allow Plaintiffs to apply for grant funds, or to even provide Plaintiffs with the written criteria used (counterfactually) to exclude them from that opportunity, runs counter to the APA, and directly counter to 25 U.S.C. 5123(f). With well-supported claims of likely irreparable harm, this factor is decidedly in Plaintiffs' favor.

### C. Balance of the Equities/Public Interest

Assuming *arguendo* that Defendants correctly consider these factors together, their assertions and conclusions fail. For example, Defendants claim that immediate issuance of award letters is critical to get projects underway by summer, Resp. at 19, but the cited support for that conclusion (Fredenberg Decl,, ECF No. 24 at ¶ 5) is lacking. While he does address the summer time frame, Defendants have offered no evidence that issuance of award letters today, as opposed to last month or in the coming days or weeks, will ensure that construction will commence this summer on any projects. And given his statement about "an abundance of caution" and September 30, 2026, discussed above, his declaration certainly cannot bear the weight Defendants place on it. Defendants have already missed the summers of 2024 and 2025 (and perhaps even 2023). If summers were of such import, Defendants presumably could have moved more quickly, by months if not years.

In the end, the public would benefit from open and fair competition to best use the available funds, and the equities follow. If the Plaintiff Tribes' projects are

Case 2:26-cv-00061-SAB    ECF No. 25    filed 03/06/26    PageID.1248    Page 11 of 13

meritorious and receive funding, the public benefits directly. If they are not, the public still benefits from proper process. And regardless, if Defendants had acknowledged in 2024 that the Plaintiff Tribes in fact meet the NOAA criteria, this would all be moot.

## II. Conclusion

All four factors favor the Plaintiff Tribes and therefore they request that the Court immediately issue the Emergency TRO. The Plaintiff Tribes stand ready to proceed with the other two motions in the manner of the Court's choosing, including a hearing on Monday or Tuesday on the Motion for TRO (ECF No. 14). If the Court prefers to proceed directly to the Motion for Preliminary Injunction (ECF No. 15), the Plaintiff Tribes would respectfully request and suggest a somewhat longer TRO to allow for the necessary preparation.

Dated: March 6, 2026

Respectfully submitted,

/s Thomas J. Peckham
Thomas J. Peckham
Nordhaus Law Firm LLC
6739 Academy Rd. NE, Ste. 256
Albuquerque, NM 87109
(505) 243-4275
tpeckham@nordhauslaw.com
*Counsel for the Plaintiff Tribes*
   *(admitted pro hac vice)*

11

And signed by local counsel as required by local rule:

| | |
|---|---|
| /s Robbi Kesler<br>Robbi Kesler<br>Lead Attorney<br>Confederated Tribes<br>  of the Chehalis Reservation<br>420 Howanut Rd.<br>Oakville, WA 98568<br>telephone: (360) 709-1835<br>*Counsel for the Confederated*<br>  *Tribes of the Chehalis Reservation* | /s Marty Raap<br>Marty Raap<br>Managing Attorney<br>Office of Reservation Attorney<br>Confederated Tribes<br>  of the Colville Reservation<br>21 Colville St.<br>Nespelem, WA 99155<br>(509) 634-2381<br>*Counsel for the Confederated*<br>  *Tribes of the Colville Reservation* |

CERTIFICATE OF SERVICE

I hereby certify that on March 6, 2026, Plaintiff's counsel electronically filed the foregoing reply with the Clerk of the Court using the CM/ECF System, which in turn automatically generated a Notice of Electronic Filing (NEF) to all parties in the case who are registered users of the CM/ECF system. The NEF for the foregoing specifically identifies recipients of electronic notice. I hereby certify that I have mailed by United States Postal Service the document and the related proposed order to the following non-CM/ECF participants:

None:  All Defendants are now represented by registered CM/ECF users.


  /s Thomas J. Peckham
Thomas J. Peckham